Filed:  October 9, 2003

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

—————————————

Nos. 03-1322(L)
(CA-02-1065-7)

—————————————

USCOC of Virginia, etc., et al.,

                              Plaintiffs - Appellees,

        versus

Montgomery County Board of Supervisors,

                              Defendant - Appellant.

—————————————

O R D E R

—————————————

        The court further amends its opinion filed September 10, 2003, and amended September 25, 2003, as follows:

        On page 4, first paragraph, line 1 -- "Cellular" is corrected to read "U.S. Cellular."

        On page 11, second full paragraph, line 8 -- The sentence beginning "In ATC Realty, the First Circuit ...." will now start a new paragraph.

                              For the Court - By Direction


                              /s/ Patricia S. Connor
                                     Clerk

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 03-1322(L)
(CA-02-1065-7)

USCOC of Virginia, etc., et al.,

Plaintiffs - Appellees,

versus

Montgomery County Board of Supervisors,

Defendant - Appellant.

O R D E R

The court amends its opinion filed September 10, 2003, as follows:

On page 3, section 1 -- counsel on brief for Amici Curiae are corrected to read as follows:

> James R. Hobson, MILLER & VAN EATON, P.L.L.C., Washington, D.C.; Joseph P. Rapisarda, Jr., County Attorney, J. T. Tokarz, Assistant County Attorney, Karen Adams, Assistant County Attorney, COUNTY OF HENRICO, Richmond, Virginia; Paul S. McCulla, Fauquier County Attorney, Warrenton, Virginia; Walter C. Erwin, III, President, LGA/Lynchburg City Attorney, Andrew R. McRoberts, Chairman, LGA Amicus Committee/Goochland County Attorney, Richmond, Virginia, for Amici Curiae Henrico County, et al. John D. Eure, JOHNSON, AYERS & MATTHEWS, Roanoke, Virginia, for Amicus Curiae Cellular Telecommunications.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

USCOCOF VIRGINIA RSA#3,
INCORPORATED, a Virginia
Corporation; ERNIE R. MARSHALL,
    *Plaintiffs-Appellees,*

    v.

MONTGOMERY COUNTY BOARD OF
SUPERVISORS,
    *Defendant-Appellant.*                No. 03-1322

HENRICO COUNTY; FAUQUIER COUNTY;
LOCAL GOVERNMENT ATTORNEYS OF
VIRGINIA, INCORPORATED,
    *Amici Supporting Appellant.*

CELLULAR TELECOMMUNICATIONS AND
INTERNET ASSOCIATION,
    *Amicus Supporting Appellees.*

USCOCOF VIRGINIA RSA#3,
INCORPORATED, a Virginia
Corporation; ERNIE R. MARSHALL,
   *Plaintiffs-Appellants,*

   v.

MONTGOMERY COUNTY BOARD OF
SUPERVISORS,
   *Defendant-Appellee.*                         No. 03-1341

HENRICO COUNTY; FAUQUIER COUNTY;
LOCAL GOVERNMENT ATTORNEYS OF
VIRGINIA, INCORPORATED,
   *Amici Supporting Appellee.*

CELLULAR TELECOMMUNICATIONS AND
INTERNET ASSOCIATION,
   *Amicus Supporting Appellants.*

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CA-02-1065-7)

Argued: June 5, 2003

Decided: September 10, 2003

Before WILKINSON, LUTTIG, and SHEDD, Circuit Judges.

_____

Reversed in part and affirmed in part by published opinion. Judge
Shedd wrote the opinion, in which Judge Wilkinson and Judge Luttig
joined.

_____

2

**COUNSEL**

**ARGUED:** Kevin Philip Oddo, FLIPPIN, DENSMORE, MORSE & JESSEE, Roanoke, Virginia, for Appellant. James Robert Creekmore, WOODS, ROGERS & HAZLEGROVE, Roanoke, Virginia, for Appellees. **ON BRIEF:** Joseph M. Rainsbury, FLIPPIN, DENS-MORE, MORSE & JESSEE, Roanoke, Virginia; Martin M. McMahon, MONTGOMERY COUNTY ATTORNEY'S OFFICE, Christiansburg, Virginia, for Appellant. Frank K. Friedman, WOODS, ROGERS & HAZLEGROVE, Roanoke, Virginia, for Appellees. James R. Hobson, MILLER & VAN EATON, P.L.L.C., Washington, D.C.; Joseph P. Rapisarda, Jr., County Attorney, J. T. Tokarz, Assistant County Attorney, Karen Adams, Assistant County Attorney, COUNTY OF HENRICO, Richmond, Virginia; Paul S. McCulla, Fauquier County Attorney, Warrenton, Virginia; Walter C. Erwin, III, President, LGA/Lynchburg City Attorney, Andrew R. McRoberts, Chairman, LGA Amicus Committee/Goochland County Attorney, Richmond, Virginia, for Amici Curiae Henrico County, et al. John D. Eure, JOHNSON, AYERS & MATTHEWS, Roanoke, Virginia, for Amicus Curiae Cellular Telecommunications.

---

**OPINION**

SHEDD, Circuit Judge:

USCOC of Virginia RSA#3, Inc. ("U.S. Cellular") and Ernie Marshall applied for a special use permit to construct a wireless telecommunications transmission tower on Marshall's land in Montgomery County, Virginia. The Montgomery County Board of Supervisors ("Board") denied the application but, in its stead, approved a permit for a shorter, less obtrusive tower. U.S. Cellular and Marshall (collectively, "U.S. Cellular") brought suit under the Telecommunications Act of 1996 ("TCA"), alleging that the Board's decision had "the effect of prohibiting the provision of personal wireless services," in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II), and that the Board's decision was not based upon substantial evidence, in violation of 47 U.S.C. § 332(c)(7)(B)(iii). U.S. Cellular also asserted a claim under Virginia law. On cross-motions for summary judgment, the district court granted the Board's motion as to the prohibition of service claim but granted U.S. Cellular's motion as to the substantial evidence and Virginia law claims. Because the district court found that the Board had violated the TCA on the substantial evidence claim, it ordered the Board to issue the permit for the taller tower. For the reasons set forth below, we affirm on the prohibition of service claim, reverse on the substantial evidence claim, and reverse on the Virginia law claim.

3

I.

U.S. Cellular sought to erect a tower near the town of Riner in Montgomery County, Virginia, to fill a coverage gap along a nine-mile stretch of Route 8. After conducting engineering studies, U.S. Cellular identified a parcel of Marshall's property on Pilot Mountain as the ideal location for a tower. Thereafter, U.S. Cellular and Marshall entered into an agreement to locate the tower on Pilot Mountain.

On May 1, 2002, U.S. Cellular applied for a special use permit from the Board to construct a 240-foot (plus a nine-foot lightning rod) wireless telecommunications tower. The proposed design called for the tower to be lighted and lattice in structure. Because of its height and location on Pilot Mountain, the tower would be visible along the ridge line, extending 170 feet above the tree canopy.

The proposed tower implicates Montgomery County's land use policies. For example, Marshall's property is zoned as exclusively agricultural, and it is designated by the Montgomery County Comprehensive Plan as a "Conservation Area." In addition, the Regional Approach to Telecommunications Towers, incorporated into the Comprehensive Plan, provides guidelines for the county's consideration of new tower requests.[1] First, the Regional Approach encourages the provision of new service capacity by locating new antennas on pre-existing telecommunications towers or other structures, a practice known as co-location. Second, the Regional Approach encourages the use of monopole stealth towers in lieu of the more intrusive lattice structures. Monopole stealth towers consist of hollow metal tubes and are designed to blend into the surroundings. Third, the Regional Approach directs that towers be constructed in areas "that will provide the least negative impact to the citizens of each jurisdiction." To help alleviate the negative impacts associated with towers, the Regional Approach provides a preferred hierarchy of lands on which to construct new towers. Ridge line property zoned as agricul-

_____

[1] Staff members representing Montgomery and Pulaski Counties, as well as the cities of Radford, Blacksburg, and Christiansburg, developed the Regional Approach in an effort to create "a uniform approach toward analyzing and processing telecommunication tower siting requests from a land use perspective."

4

tural or conservation, such as the property at issue here, ranks as one of the least preferred categories of land for the construction of telecommunications towers.[2]

Hearings on the request for the tower were held before the Montgomery County Planning Commission and the Board. In support of its application, U.S. Cellular introduced a petition signed by approximately 100 people in favor of the proposed tower. The individuals who signed the petition, however, were not all residents of Riner. In fact, a significant number of signatures were supplied by people who lived outside Riner but traveled through the area to be served by the tower. The only letter received in opposition was submitted by the resident who owned property adjacent to the proposed site.

After a first round of hearings, the Board authorized the county's consultants, Strategic Communication Services ("SCS") and Tradewinds, to evaluate the signal strengths that would be generated by both the proposed tower and an alternative height of 195-feet.[3] The Board also directed the consultants to determine whether any co-location opportunities would obviate the need for a new tower.

---

[2] The Regional Approach ranks, from most to least preferable, the categories of land on which to build new telecommunications towers. The list is as follows:

      A.  Industrial parks

      B.  Industrial zoned lands

      C.  Commercially zoned lands

      D.  High density residential lands

      E.  Agriculture/Conservation zoned lands-non-ridge, wooded

      F.  Agriculture/Conservation zoned lands-non-ridge, open

      G.  Medium density residential lands

      *H.  Agriculture/Conservation zoned lands-ridge line*

      I.  Low density residential lands.

(Emphasis added.)

[3] Federal regulations require lighting for structures that exceed 199 feet. This alternative height, therefore, would not require lighting.

The consultants' reports were generally favorable to U.S. Cellular. For example, the SCS report found that U.S. Cellular selected the "optimum site to provide maximum coverage along Route 8." It also determined that a shorter tower of 195-feet would result in a coverage loss of approximately 33% and that none of the existing co-location sites presented valid opportunities. The Tradewinds report reached substantially similar results and noted that, due to the proposed height of the tower, the county should consider granting a variance from the Comprehensive Plan's preference for monopole towers. The Tradewinds report did note, however, that a single 240-foot tower was not the only option that would provide the desired coverage. Equivalent coverage would be realized if multiple, shorter towers were built.

After the completion of the consultants' studies, Steve Sandy, the county zoning administrator, recommended to the Planning Commission and to the Board that the permit be granted for a 195-foot (plus a four-foot lightning rod), unlighted, monopole stealth tower. Sandy noted that while the shorter tower would not provide optimal coverage, it would provide service for a large portion of the target area and would more closely conform to the Comprehensive Plan.

The Planning Commission and the Board conducted a second round of hearings, and on August 14, 2002, the Planning Commission adopted Sandy's recommendation and referred it to the Board. On August 26, 2002, the Board considered U.S. Cellular's application, along with Sandy's proposed compromise, and conducted extended debate. The transcript of the proceedings indicates that numerous issues were discussed, including (1) the taller tower's failure to conform to the Comprehensive Plan and the Regional Approach; (2) the visual intrusiveness of the taller tower; (3) the option of building multiple, shorter towers; (4) the substantial coverage that would be provided by the shorter tower; and (5) the possibility that, even with the taller tower, additional sites would be necessary to fill gaps in coverage. At the conclusion of the debate, the Board voted on both the 240-foot and the 195-foot towers. By a vote of four to three, the Board rejected the 240-foot tower. Immediately thereafter, the Board approved the 195-foot tower by the same margin.

Subsequently, U.S. Cellular brought an action in the district court, alleging that the Board violated the TCA because the denial of the

6

permit had the effect of prohibiting the provision of personal wireless services and because the denial of the permit was not supported by substantial evidence in a written record. U.S. Cellular also brought a claim under Virginia law, alleging that the Board acted arbitrarily and unreasonably. On cross-motions for summary judgment, the district court granted the Board's motion as to the denial of service claim but granted U.S. Cellular's motion as to the substantial evidence and Virginia law claims. Because the court determined that the Board had violated the TCA on at least one of the claims, the court ordered the Board to approve the special use permit for the 240-foot tower. Both parties appeal.

## II.

The TCA preserves the power of local governments to regulate the construction of wireless telecommunications facilities but imposes several restrictions on local authority. *See* 47 U.S.C. § 332(c)(7).[4] Among these limitations, a local government may not engage in regulation that prohibits or has "the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). In addi-

_____

[4] Section 704(a)(7) of the TCA, codified as 47 U.S.C. § 332(c)(7), provides, in pertinent part:

> (A) General authority
>
> Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
>
> (B) Limitations
>
> (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof. . .
>
> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services. . .
>
> (iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record. . . .

7

tion, a local government's denial of a request to construct a wireless service facility must be supported by "substantial evidence in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). The TCA provides for a cause of action to enforce these limitations on local control. 47 U.S.C. § 332(c)(7)(B)(v).[5]

## A.

We first address the district court's determination that the Board's action did not prohibit or have the effect of prohibiting personal wireless services. On cross-appeal, U.S. Cellular maintains that, even though the Board approved a 195-foot tower in lieu of a 240-foot tower, the resultant coverage would be so inadequate as to create a prohibition of service along portions of Route 8. We conclude that U.S. Cellular has not met the burden required in this circuit for prevailing on a prohibition of service claim.

To be entitled to relief under a (B)(i)(II) prohibition of service claim, the plaintiff's burden is substantial. In *AT&T Wireless PCS, Inc. v. City Council of Virginia Beach*, 155 F.3d 423, 428-29 (4th Cir. 1998), we held that a telecommunications provider could not prevail in a challenge to an individual zoning decision absent a general ban or policy to reject all applications. *See also 360o Communications Co. v. Board of Supervisors of Albemarle County*, 211 F.3d 79, 88 (4th Cir. 2000) ("The burden for the carrier invoking this provision is a heavy one: to show from language or circumstances not just that *this* application has been rejected, but that further reasonable efforts are so likely to be fruitless that it is a waste of time to try."). In determining that an individual zoning decision could not form the basis for a prohibition of service claim, we reasoned that because subsection (B)(iii) specifically preserves the authority of local governments to reject applications for wireless facilities, a reading of the statute that prohibited local governments from rejecting individual applications would effectively eliminate local control. To preserve local authority and to reconcile subsections (B)(i)(II) and (B)(iii), we determined that

---

[5] For ease of reference, the relevant sections of the TCA will also be referred to by their subsections. Thus, 47 U.S.C. § 332(c)(7)(B)(i)(II) will be referred to as a (B)(i)(II) and 47 U.S.C. § 332(c)(7)(B)(iii) will be referred to as (B)(iii).

8

the statute should be interpreted to provide relief only upon a showing of a blanket ban of wireless facilities. *Virginia Beach*, 155 F.3d at 429. We have since recognized, however, the theoretical possibility that the denial of an individual permit could amount to a prohibition of service if the service could only be provided from a particular site, but we noted that such a scenario "seems unlikely in the real world." *Albemarle County*, 211 F.3d at 86.[6]

Applying this test, we find that U.S. Cellular has failed to meet its burden of demonstrating that the Board's action resulted in a prohibition of service. Although the Board did not approve the 240-foot tower sought by U.S. Cellular, it did approve the construction of a 195-foot tower, which would provide wireless capabilities to a significant area of the county currently without quality wireless service. Moreover, the Board's careful consideration of the application does not provide any indication that future tower requests would be "fruitless." Far from seeking to prohibit service, Board members indicated a willingness to ensure coverage for the entire target area. For example, Board members discussed the option of building several shorter towers to make up for the areas unreached by the 195-foot tower. Furthermore, the Board's willingness to approve a tower at all, on a piece of land disfavored by the Comprehensive Plan and Regional Approach, indicates that the Board was not hostile to the construction of new towers. Given these facts, we conclude that the district court correctly granted summary judgment to the Board on U.S. Cellular's prohibition of service claim.

---

[6] The Second and Third Circuits have developed a less stringent test for prohibition of service claims. Under this test, the denial of a permit would violate the TCA if the proposed facility is "the least intrusive means to close a significant gap in service." *Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 643 (2d Cir. 1999); *APT Pittsburgh Ltd. P'ship v. Penn Township*, 196 F.3d 469, 480 (3d Cir. 1999). In *Albemarle County*, however, we specifically declined to adopt this approach, noting that it would unnecessarily interfere with the fact-specific nature of the inquiry and would effectively create a presumption, shifting the burden to the local government to explain its actions. *Albemarle County*, 211 F.3d at 87.

9

B.

We turn next to the district court's determination that the Board's rejection of the 240-foot tower was not based upon "substantial evidence in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). In conducting the substantial evidence analysis, the district court employed a comparative approach and determined that the Board's decision to grant a permit for a 195-foot tower in lieu of a 240-foot tower was premised solely upon aesthetic considerations, in violation of Virginia law. Because the district court concluded that the Board's decision failed to comply with Virginia law, it held that the decision was not based upon substantial evidence, as required by the TCA, and granted judgment to U.S. Cellular. We hold that the district court incorrectly applied Virginia law and erred in employing a comparative approach in its substantial evidence analysis. Accordingly, we reverse on the substantial evidence claim.

1.

We first address the district court's determination that the Board's actions were based solely upon aesthetic considerations in violation of Virginia law. In *Board of Supervisors of James City County v. Rowe*, 216 Va. 128 (1975), the Supreme Court of Virginia held that a zoning practice based solely upon aesthetics was impermissible under Virginia law. At issue in *Rowe* was the validity of a local ordinance that, among other things, required building permit applicants to submit their plans to an Architectural Design Review Board. The Review Board would determine whether the designs were "in good taste" and in "reasonable harmony with the existing buildings in the surrounding area." *Id.* at 145. As authority for this requirement, the James City County Board relied upon a Virginia statute that provided localities with the power to adopt zoning ordinances that "facilitate the creation of a convenient, attractive and harmonious community." The Supreme Court of Virginia, however, concluded that the statute did not delegate to the Board the broad authority to impose architectural design restrictions that were solely aesthetic in nature. *Id.* at 145-146.

The district court here, noting that the record was replete with references to the "visual intrusiveness" of the taller tower, determined

10

that the fundamental difference between the two towers was aesthetic in nature. As the court put it, the shorter tower "looked better." Accordingly, the court held that the Board engaged in impermissible aesthetics-only zoning.

We conclude that the Board's actions are not analogous to the architectural design restrictions prohibited by *Rowe*. In reaching this conclusion, we need not determine the precise meaning of the word "aesthetics," nor is it necessary to outline the exact contours of what constitutes aesthetics-only zoning under Virginia law. It is sufficient to say that Virginia law provides, in a statute not at issue in *Rowe*, that local governments may regulate the "*size*, *height*, area, *bulk*, location, erection, construction, reconstruction, alteration, repair, maintenance, razing, or removal of structures." Va. Code Ann. § 15.2-2280 (emphasis added). No matter what zoning practices are actually prohibited because of an undue emphasis on aesthetic values, Virginia law specifically authorizes the consideration of factors such as size, height, and bulk. The Board's consideration of the height of the proposed tower, therefore, is proper. In addition, the Board's consideration of the more visually intrusive lattice design, which implicates the size and bulk of the proposed tower, is also proper. Because the consideration of these factors is authorized by Virginia law, the district court erred in concluding that the Board engaged in an invalid zoning practice.

2.

As we have noted, the district court concluded that the sole difference between the 195-foot and the 240-foot towers was aesthetic in nature because it applied a comparative test in assessing the substantial evidence claim. The First Circuit has employed this test in conducting a substantial evidence analysis but has expressly refused to adopt it. *See ATC Realty, LLC v. Town of Kingston, New Hampshire*, 303 F.3d 91, 95 (1st Cir. 2002). We conclude that the district court's use of this approach was error.

In *ATC Realty*, the First Circuit considered whether a local Planning Board's decision to grant one company's application for a wireless facility over that of another company was supported by substantial evidence. This analysis, however, does not comport with the directive of subsection (B)(iii), which states that a local government's decision "to deny" a provider's request must be

11

supported by substantial evidence. 47 U.S.C. § 332(c)(7)(B)(iii). The statute does not direct us to consider the question whether the 195-foot tower should have been approved in lieu of the 240-foot tower. It only requires the existence of substantial evidence to support the *denial* of the 240-foot tower.

By engaging in a direct comparison between the two towers, the district court heightened the scrutiny, above that required by the TCA, that a reviewing court applies to the decisions of local governments. Such an approach leads to the perverse result of imposing a stricter standard of review precisely because the Board approved a tower at all. Under this comparative standard, if the Board had rejected the application for the 240-foot tower outright, the review would be less exacting. This approach would discourage local governments from accommodating carrier requests to build towers in non-preferred areas, thereby slowing the roll-out of wireless services. The TCA simply does not require this result. Accordingly, we reject the comparative test employed by the district court and hold that the proper approach is to determine whether substantial evidence exists to support the denial of U.S. Cellular's application for the 240-foot tower.[7]

3.

Having rid the substantial evidence analysis of any comparative framework, we now proceed directly to the substantial evidence claim. The Supreme Court has defined "substantial evidence" to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera v. NLRB*, 340 U.S. 474, 477 (1951). It requires more than a mere scintilla but less than a preponderance. *360ᵒ Communications Co. v. Board of Supervisors*

---

[7] We note that while the substantial evidence inquiry should focus on the denial of a particular application, the approval of an alternative tower is a relevant consideration for a reviewing court insofar as it demonstrates that a local government is not acting out of an anti-tower motivation and, hence, lacks substantial evidence for its decision. Here, the approval of the shorter tower, although it is by no means dispositive, strengthens the Board's argument that its decision was based upon substantial evidence rather than upon a general hostility to the construction of new towers.

12

*of Albemarle County*, 211 F.3d 79, 83 (4th Cir. 2000). In reviewing the decision of an elected body, we consider the "reasonable mind" to be that of a reasonable legislator, *AT&T Wireless PCS, Inc. v. City Council of Virginia Beach*, 155 F.3d 423, 430 (4th Cir. 1998), and we do not substitute our judgment for the legislature's but must uphold the decision if it has "substantial support in the record as a whole." *Id*. (quoting *NLRB v. Grand Canyon Mining Co.*, 116 F.3d 1039, 1044 (4th Cir. 1997)). Our inquiry, therefore, is to ask whether a reasonable legislator would accept the evidence in the record as adequate to support the denial of the application for the 240-foot tower.

The Board argues that its decision was based upon the proposed tower's inconsistencies with Montgomery County's zoning ordinances and land use guidelines. The location and design of the tower, for example, did not conform to the Comprehensive Plan or to the Regional Approach. According to the Board, the proposed tower's failure to adhere to the applicable zoning requirements provides substantial evidence to justify the rejection of the tower. We agree.

In *360º Communications Co. v. Board of Supervisors of Albemarle County*, 211 F.3d 79 (4th Cir. 2000), a telecommunications provider applied for a special use permit to build a tower on Dudley Mountain in Albemarle County, Virginia, and the local board denied the application. The rejection of the proposed tower was based in part on the tower's failure to comply with the county's Comprehensive Plan, the Open Space Plan, and Zoning Ordinance. Both the Comprehensive Plan and Open Space Plan discouraged the construction of structures that would modify ridge lines and that would contribute to erosion in mountainous areas. In addition, the proposed tower violated the Zoning Ordinance's limitations on a structure's proximity to neighboring lots. The provider brought suit under the TCA, claiming that the denial of the permit was not based on substantial evidence. Upon review, we upheld the local board's decision. Although the tower's inconsistency with zoning laws was not the only evidence presented to justify the denial of the application, we found it to be a significant factor in our substantial evidence analysis.

Under the rationale of *Albemarle County*, the failure of U.S. Cellular's proposed tower to comply with Montgomery County's zoning ordinances and land use guidelines is a significant evidentiary factor

13

that was properly considered by the Board. The question left unresolved by *Albemarle County*, however, is whether this evidence alone is sufficient to establish substantial evidence. We conclude that, under the facts of this case, the proposed tower's inconsistency with local zoning requirements is sufficient to establish substantial evidence for the denial of the permit.

We find several zoning issues to be particularly relevant here. First, the land is zoned as "Agricultural" and designated by the Comprehensive Plan as "Conservation." The use of the land for the construction of a telecommunications tower is neither agricultural nor does it appear to have any particular connection with conservation goals. Second, the Comprehensive Plan and Regional Approach discourage the construction of new towers on ridge line lands designated as Agricultural or Conservation, precisely the type of land in question here. Third, the Regional Approach disfavors the use of lattice towers such as that proposed by U.S. Cellular, encouraging instead the construction of monopole stealth towers.

Additionally, there was evidence in the record indicating that multiple, shorter towers would provide a viable alternative to the 240-foot tower. This option was supported by the Tradewinds report, which noted that multiple tower sites would provide comparable coverage to the proposed tower. Such an alternative would conform more closely to the Comprehensive Plan and Regional Approach. Furthermore, Sandy, the county zoning administrator, informed the Board that, even if the 240-foot tower were approved, coverage gaps would still exist, resulting in the need for additional towers anyway.

We believe that the aforementioned evidence regarding the proposed tower's inconsistencies with Montgomery County zoning ordinances and guidelines provides ample support for a reasonable legislator's decision to deny the application for U.S. Cellular's proposed tower. The evidence presented to the Board certainly amounts to more than a mere scintilla. Accordingly, we conclude that the Board's denial of the 240-foot tower application was based upon substantial evidence in a written record.[8]

---

[8] U.S. Cellular argues that the Board's decision cannot be justified in light of the scientific evidence that was presented in support of the pro-

14

III.

The district court granted summary judgment to U.S. Cellular on its claim that the Board's actions were arbitrary and unreasonable under Virginia law. The court reasoned that because the Board's decision was based on aesthetic considerations only, in violation of *Board of Supervisors of James City County v. Rowe*, 216 Va. 128 (1975), it

---

posed tower and the "virtually unanimous community support" for the tower. U.S. Cellular's arguments are without merit. While there is no question that this evidence strongly supports U.S. Cellular's application and would in its own right qualify as substantial evidence, the Board may still deny the application based upon other evidence, as long as it amounts to more than a "mere scintilla." *See AT&T Wireless PCS, Inc. v. City Council of Virginia Beach*, 155 F.3d 423, 431 (explaining that although there was more than sufficient evidence for the city council to approve the application for a telecommunications tower, which may even have amounted to a preponderance of the evidence, the council's rejection of the application was nevertheless supported by substantial evidence). Upon review of the evidence relied upon by U.S. Cellular, we cannot say that it is so overwhelming as to wholly obliterate the evidentiary value of the proposed tower's incompatibility with local zoning law, which as we have determined was properly relied upon by the Board.

Moreover, public opinion does not mandate local zoning decisions under the TCA. To be sure, we have held that widespread public opposition to the construction of a telecommunications tower provides substantial evidence to support a local government's denial of a permit. *See AT&T Wireless PCS, Inc. v. City Council of Virginia Beach*, 155 F.3d 423, 431 (4th Cir. 1998). *See also Petersburg Cellular P'ship v. Board of Supervisors of Nottoway County*, 205 F.3d 688, 695-696 (4th Cir. 2000)(noting that public opposition, if based upon rational concerns, provides substantial evidence to deny a permit); *360° Communications Co. v. Board of Supervisors of Albemarle County*, 211 F.3d 79, 83-84 (4th Cir. 2000)(determining that public opposition was a factor that contributed to a finding of substantial evidence); *AT&T Wireless PCS, Inc. v. Winston-Salem Zoning Board of Adjustment*, 172 F.3d 307, 315-316 (4th Cir. 1999)(same). In *Virginia Beach*, for example, we determined that widespread public opposition to the proposed towers, based upon their visual impact on the surrounding residential area, provided the city council with substantial evidence to reject the application. We did not hold in *Virginia Beach*, however, nor have we ever held, that public opinion mandated that the city council reject the application.

15

acted unreasonably. Because we have determined that the Board's decision did not run afoul of *Rowe*, we reverse the judgment granted in favor of U.S. Cellular on its claim under Virginia law.

IV.

For the foregoing reasons, we reverse the judgment of the district court on the subsection (B)(iii) and Virginia law claims and order summary judgment in favor of the Board. We affirm the judgment of the district court in favor of the Board on the subsection (B)(i)(II) claim.

*REVERSED IN PART AND AFFIRMED IN PART*

16