Affirmed by published opinion. Judge KEENAN wrote the majority opinion, in which Judge AGEE joined. Judge AGEE wrote a separate concurring opinion.
Judge DAVIS wrote a separate opinion concurring in part and dissenting in part.
OPINION
BARBARA MILANO KEENAN, Circuit Judge:
In this appeal, we consider certain “prohibition” and “discrimination” challenges brought by a wireless telecommunications provider against a local governing body under a provision of the Telecommunications Act of 1996 (the Act). 47 U.S.C. § 332(c)(7)(B)®. We review the district court’s holding that the Board of Supervisors of Fairfax County, Virginia (the Board), did not violate the Act in denying a request filed by T-Mobile Northeast, LLC (T-Mobile), to construct a wireless service facility on an existing transmission pole.
The Act bars local governing bodies regulating the placement and modification of personal wireless service facilities: 1) from unreasonably discriminating among similar service providers; and 2) from prohibiting, or effectively prohibiting, wireless services. Id. We decide whether the district court properly applied our standards for resolving prohibition and discrimination claims brought under this statute. We also consider whether a declaratory ruling issued by the Federal Communications Commission (FCC) in 2009 affects our established standards. Upon our review, we affirm the district court’s judgment that the Board’s decision denying T-Mobile’s request to construct a wireless facility did not violate the Act.
I.
In 2009, T-Mobile, a company providing wireless telecommunications services to its customers, filed two related applications with the Fairfax County Planning Commission (Planning Commission) and the Board. T-Mobile filed these applications seeking to increase the height of an existing utility transmission pole (the pole) *263 from 100 feet to 110 feet, and to attach to the extended portion of the pole a wireless facility consisting of three panel antennas. These proposed antennas each would have a height of almost five feet, and a width of twelve inches, and would be arranged in a cylindrical configuration around the top of the pole. The proposed pole extension would be grey in color, and the panel antennas would be painted grey to match the extension.
The pole is situated on a public right-of-way near an area zoned for residential use, at the intersection of Colonial Farm Road, Dolley Madison Boulevard, and Georgetown Pike, an historic scenic byway. Several residential neighborhoods are located near the public right-of-way. The Ever-may residential subdivision is the neighborhood most affected by the visual impact of the pole.
In its application filed under Virginia Code § 15.2-2232, T-Mobile was required to obtain a determination from the Planning Commission regarding whether the proposed facility substantially conformed with Fairfax County’s Comprehensive Plan (the County’s comprehensive plan). T-Mobile also was required under the Fair-fax County Zoning Ordinance (the Zoning Ordinance) to obtain a special exception from the Board by showing that the proposed facility would be “harmonious with and [would] not adversely affect the use ... of neighboring properties.” Zoning Ordinance § 9-006(3).
At the time T-Mobile filed its applications, both Verizon Wireless (Verizon) and AT & T Wireless, formerly New Cingular Wireless, P.C.S., L.L.C. (AT & T), competitors of T-Mobile, had received permission to place panel antennas on the pole. In 2004, Verizon was permitted to extend the pole from its height of 90 feet, to a height of 100 feet, and to attach 12 antennas around the pole. Before Verizon’s application ultimately was approved, that application was opposed by the residents of the Evermay community due to the increased height of the pole.
In 2006, the Planning Commission permitted AT & T to install nine panel antennas below Verizon’s antennas on the pole. Residents of the Evermay community did not object to the placement of these antennas on the pole and, based on the specifications of AT & T’s proposed facility, AT & T’s application did not require a public hearing.
T-Mobile’s applications contained a statement asserting that the area along the George Washington Parkway, Georgetown Pike, and Dolley Madison Boulevard in Fairfax County did not have adequate service from T-Mobile due to the absence of a nearby wireless T-Mobile facility. T-Mobile also represented that its objective in constructing the proposed facility was to “solidify in-vehicle coverage” along the roads previously mentioned, and to “eliminate the in-building coverage gap in the surrounding neighborhoods.” T-Mobile explained that it had considered, but “ruled out,” alternative sites for its proposed facility.
In September 2009, the Planning Commission staff issued a report recommending that the Planning Commission find that T-Mobile’s proposed facility satisfied the criteria of location, character, and extent, as specified in Virginia Code § 15.2-2232, and that the proposed facility was in accord with the County’s comprehensive plan. In November 2009, the Planning Commission held a public hearing on the matter. After that hearing, the Planning Commission denied T-Mobile’s application on the grounds that the visual impact of the proposed facility would be “significant and adverse,” and that the location, character, and extent of the proposed facility was not substantially in accord with the *264 County’s comprehensive plan. The Commission also recommended that the Board deny T-Mobile’s application for a special exception.
T-Mobile filed an appeal to the Board, which held hearings to consider both T-Mobile’s application and its request for a special exception. At the hearing before the Board, a representative from the Ever-may community expressed the community’s strong opposition to the proposed extension of the pole, citing the increased visibility of the higher pole and the alleged adverse impact that the altered pole would have on the residents’ use and enjoyment of their properties. The Board also considered presentations from Planning Commission staff members and from representatives of T-Mobile.
The Board determined that T-Mobile’s proposed facility was not in conformance with the County’s comprehensive plan, and failed to comply with the Zoning Ordinance’s mandatory standards for approval of special exceptions. Accordingly, the Board denied T-Mobile’s application and request for a special exception.
T-Mobile filed a complaint in the district court against the Board,[1] as permitted by 47 U.S.C. § 332(c)(7)(B)(v).[2] In its complaint, T-Mobile asserted that the Board’s denials violated certain provisions of the Act, which place limitations on a local governing body’s decisional authority regarding the placement and modification of personal wireless service facilities. 47 U.S.C. § 332(c)(7)(B). After T-Mobile and the Board filed cross-motions for summary judgment, the district court granted summary judgment in favor of the Board, and T-Mobile timely filed the present appeal.
II.
In 1996, the Act was signed into law. Section 704(c)(7) of the Act, entitled “Preservation of local zoning authority,” is codified in 47 U.S.C. § 332(c)(7). Pub.L. No. 104-104, 110 Stat. 56 (1996). That section includes two parts that are relevant to this appeal. Part (A), entitled “General authority,” states that
[e]xcept as provided in this paragraph, nothing in this Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
47 U.S.C. § 332(c)(7)(A). Part (B) of this same section imposes limitations on this general authority. 47 U.S.C. § 332(c)(7)(B). Two of the enumerated limitations in part (B) are at issue in this appeal.[3] Those provisions state:
(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government instrumentality thereof—
*265 (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
47 U.S.C. § 332(c)(7)(B).
We previously have explained that § 332(c)(7) of the Act reflects the balance between the national interest of facilitating the growth of telecommunications and the interest of local governments in making decisions based on zoning considerations. 360° Communications Co. of Charlottesville v. Bd. of Supervisors of Albemarle County, 211 F.3d 79, 86 (4th Cir.2000) (Albemarle County). The protection of this balance has been a primary concern in our development of standards to address claims brought under § 332(c)(7).
III.
We review the district court’s award of summary judgment de novo. S.C. Green Party v. S.C. State Election Comm’n, 612 F.3d 752, 755 (4th Cir.2010). Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.”
On appeal, T-Mobile argues that the district court erred in concluding that: 1) the Board’s denial of T-Mobile’s applications did not effectively prohibit personal wireless services under 47 U.S.C. § 332(e)(7)(B)(i)(II) (hereafter, subsection (B)(i)(II)); and 2) the Board did not unreasonably discriminate against T-Mobile under 47 U.S.C. § 332(c)(7)(B)(i)(I) (hereafter, subsection (B)(i)(I)). We will address each of these arguments in turn.
A.
1.
We first consider T-Mobile’s claim that the Board’s denial of T-Mobile’s applications effectively prohibited T-Mobile from providing wireless service to the nearby area in violation of subsection (B)(i)(II). Before we reach the merits of this claim, however, we begin by addressing T-Mobile’s arguments regarding our standard for reviewing claims raised under subsection (B)(i)(II).
T-Mobile contends that in our prior decisions, we have held that subsection (B)(i)(II) is violated only by a “blanket ban” on wireless deployment, with the result that individual zoning decisions may never constitute a prohibition of wireless services under the Act. According to T~ Mobile, in 2009, the FCC rejected such a “blanket ban” approach as being inconsistent with the language and the purpose of the Act. See In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B), 24 FCC Red. 13994 (F.C.C. 2009) (In re Petition). T-Mobile contends that the FCC’s ruling is entitled to deference, and that under that ruling, we are required to adopt a new standard for the review of prohibition claims brought under (B)(i)(II). We disagree with T-Mobile’s arguments.
Our previous opinions addressing subsection (B)(i)(II) have established certain principles, which guide the review of challenges brought under that subsection. In our decision in AT & T Wireless PCS, Inc. v. City Council of Virginia Beach, 155 F.3d 423 (4th Cir.1998) (Virginia Beach), we considered a local governing body’s denial of an application submitted jointly by four telecommunication companies, which sought approval to construct two communications towers in a residential area. Id. at 424. There, the district court concluded that the local governing body *266 had not effectively prohibited personal wireless service, within the meaning of subsection (B)(i)(II), because that subsection only applied to “blanket prohibitions” or “general bans or policies” against the provision of wireless services. Id. at 428.
We disagreed with the district court’s narrow interpretation of (B)(i)(II), and explained that policies essentially guaranteeing the rejection of all wireless facility applications, as well as explicit policies or bans against the granting of such applications, would constitute an unlawful prohibition of personal wireless services in violation of subsection (B)(i)(II). Virginia Beach, 155 F.3d at 429. However, based on the record in that case, we ultimately affirmed the district court’s judgment that the local governing body had not violated subsection (B)(i)(II).
Two years later, we addressed the question whether a single denial of a site permit could ever violate subsection (B)(i)(II). Albemarle County, 211 F.3d at 86. While acknowledging that generally a single denial of a permit for a particular site will not be construed as a prohibition of wireless services, we explained that the circumstances surrounding the denial of a single application, or the circumstances surrounding the procedure for processing that application, could amount to a prohibition of wireless services. Id. at 86.
Even though the most obvious violation of (B)(i)(II) would involve a “blanket ban” on wireless service, we have instructed reviewing courts to consider, on a case-by-case basis, the facts surrounding a local governing body’s denial of an application. Id. at 87. We therefore disagree with T-Mobile’s attempt to characterize our precedent as holding that subsection (B)(i)(II) may be violated only by a “blanket ban” on wireless deployment.
Under our precedent, a plaintiff can prevail in asserting a violation of subsection (B)(i)(II) by showing that a local governing body has a general policy that essentially guarantees rejection of all wireless facility applications. Albemarle County, 211 F.3d at 86; Virginia Beach, 155 F.3d at 429. Alternatively, a plaintiff can prevail by demonstrating that the denial of an application for one particular site is “tantamount” to a general prohibition of service. Albemarle County, 211 F.3d at 87-88. In asserting a claim under this alternative theory, a plaintiff may prevail upon showing both an effective absence of coverage, and a lack of reasonable alternative sites to provide coverage. See id. at 87-88.
With regard to the requirement that a plaintiff demonstrate the absence of reasonable alternatives, we specifically rejected the standard adopted by other circuits permitting a plaintiff to establish merely that its proposed facility constitutes “the least intrusive means to close a significant gap in service.” Albemarle County, 211 F.3d at 87 (citing APT Pittsburgh Ltd. P’ship v. Penn Twp., 196 F.3d 469, 480 (3d Cir.1999); Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 643 (2d Cir.1999)); see also MetroPCS, Inc. v. City and County of San Francisco, 400 F.3d 715 (9th Cir.2005) (adopting least intrusive means test after our decision in Albemarle County). We explained that the “least intrusive means” standard “unduly limit[s] what is essentially a fact-bound inquiry,” and that a local governing body rationally could “reject the least intrusive proposal in favor of a more intrusive proposal that provides better service.” Id. We also explained that such a standard improperly would create a presumption favoring the wireless industry over the interests of the local community, shifting the burden of production to the local governing body. Id.
We further explained that the application of any specific formula, such as the *267 above formula adopted by some of our sister circuits, ultimately would require a broader inquiry whether the denial of a permit for a particular site had the effect of prohibiting wireless services, within the meaning of subsection (B)(i)(II). Id. Thus, we concluded that reviewing courts should not be constrained by any specific formulation, but should conduct a fact-based analysis of the record, as contemplated by the Act, in determining whether a local governing body violated subsection (B)(i)(II). Id.
Within these boundaries set by our precedent, a plaintiff in this Circuit thus may prove a violation of subsection (B)(i)(II) based on a single denial of a site application, and not merely by demonstrating a “blanket ban” on wireless deployment. With this discussion in mind, we turn to consider T-Mobile’s argument that our precedent has been affected by a declaratory ruling issued by the FCC in 2009.
In its narrow ruling, the FCC concluded that when a site application is denied based on a finding that another provider already offers service in the area, such denial violates subsection (B)(i)(II). In re Petition, 24 FCC Red. at 14017 ¶ 58. The present case, however, is not affected by the FCC’s decision, because T-Mobile does not allege that the Board’s decision was based on a finding that the area to be served by T-Mobile’s proposed facility also was served by another provider.
Moreover, we observe that the language in the FCC’s ruling supports our construction of subsection (B)(i)(II). The FCC stated that when “a bona fide local zoning concern, rather than the mere presence of other carriers, drives a zoning decision, it should be unaffected by our ruling today.” Id. at 14018 ¶ 62. Thus, the FCC specifically emphasized that a local governing body’s “authority to base zoning regulation on other grounds is left intact by this ruling.” Id. at 14017 ¶ 60.
The FCC’s ruling cited only one case from this Circuit, our decision in Virginia Beach. In re Petition, 24 FCC Red. at 14017 ¶ 60. The FCC’s citation to this case was limited to explaining the FCC’s position that its ruling would not strip a local governing body’s authority of its zoning rights, a concern we expressed in Virginia Beach. Id. Thus, we conclude that our precedent regarding the interpretation of subsection (B)(i)(II), as detailed in our decision in Albemarle County, is unaffected by the FCC’s ruling. Accordingly, we decline to depart from that precedent and reject T-Mobile’s proposal that we adopt a “least intrusive means” test, or any other specific test, for the review of claims raised under subsection (B)(i)(II).
2.
Within this legal framework, we consider the record before us to determine whether the Board’s decision effectively prohibited personal wireless service, within the meaning of section (B)(i)(II). In asserting that the Board violated subsection (B)(i)(II), T-Mobile contends that it has shown a legally cognizable absence in coverage in the area surrounding the proposed facility and that, without the proposed facility, T-Mobile will remain unable to provide sufficient, reliable in-vehicle and in-building coverage in the area at issue.
T-Mobile also contends that it has investigated numerous alternative sites for its facility but that those sites were technically infeasible, practically unavailable, or inconsistent with the County’s comprehensive plan.[4] Thus, T-Mobile contends that *268 the Board’s denial of its applications effectively prohibited the provision of wireless services. We disagree with T-Mobile’s arguments.
Initially, we emphasize that a plaintiffs burden to prove a violation of subsection (B)(i)(II) is substantial and is particularly heavy when, as in this case, the plaintiff already provides some level of wireless service to the area. Albemarle County, 211 F.3d at 87-88. This substantial burden is consistent with the plain language of subsection (B)(i)(II), which is violated only when a local governing body’s decision prohibits or has the effect of prohibiting personal wireless services. See Albemarle County, 211 F.3d at 88 n. 1. Importantly, the language of this subsection does not encompass the ordinary situation in which a local governing body’s decision merely limits the level of wireless services available because, as we have explained, the Act cannot guarantee 100 percent coverage. Id.
As discussed above, a plaintiff must meet one of two standards to prevail under subsection (B)(i)(II). The plaintiff must establish: 1) that a local governing body has a general policy that effectively guarantees the rejection of all wireless facility applications, Albemarle County, 211 F.3d at 87; Virginia Beach, 155 F.3d at 429; or 2) that the denial of an application for one particular site is “tantamount” to a general prohibition of service, Albemarle County, 211 F.3d at 87-88.
In asserting a claim under this second theory, as T-Mobile does here, a plaintiff must show a legally cognizable deficit in coverage amounting to an effective absence of coverage, and that it lacks reasonable alternative sites to provide coverage. See id. at 87-88. We also have stated that the plaintiff should be able to demonstrate that further reasonable efforts to gain approval for alternative facilities would be “fruitless.” See USCOC of Virginia RSA# 3, Inc. v. Montgomery Cnty. Bd. of Supervisors, 343 F.3d 262, 269 (4th Cir.2003); Albemarle County, 211 F.3d at 88.
In Albemarle County, as in this case, the wireless provider and the local governing body filed cross-motions for summary judgment. 211 F.3d at 83. We reversed the district court’s decision granting the provider’s motion on its prohibition claim, concluding that the provider failed to meet its heavy burden under section (B)(i)(II). We explained that the record was unclear regarding whether there was an absence of service in a particular part of the county. Id. at 87-88. We further stated that, even assuming the existence of cognizable gaps in coverage, the record contained insufficient evidence to establish whether there were alternative locations available for the proposed wireless facilities. Id. at 88.
Additionally, we observed that the record showed that the local governing body had approved numerous applications for other wireless facilities, including several filed by the provider asserting a violation of the Act. Id. Thus, we concluded that the provider failed to meet its heavy burden to show that the denial of its permit for a particular site amounted to a general prohibition of service. Id.
In our view, like the provider in Albemarle County, T-Mobile has failed to carry its heavy burden in this case. Even if we assume, without deciding, that T-Mobile established a gap in coverage suffi *269 cient to make a claim under subsection (B)(i)(II), we conclude that on this record T-Mobile failed to show that it lacks reasonable alternatives to provide service in the area at issue, and failed to show that further attempts to gain the Board’s approval would be futile.
T-Mobile’s evidence of alternative sites submitted to the district court included several declarations, along with some exhibits, completed by persons who explored alternative locations or assisted in doing so. In our view, the content of those declarations presents very general conclusions regarding the feasibility of alternative locations, including repeated assertions that the locations “would not close the significant gap in T-Mobile’s coverage” and “would not allow T-Mobile to meet its coverage objectives.” T-Mobile cannot meet its burden of proving that the Board’s denial was “tantamount” to a general effective prohibition on services by showing merely that the alternative sites would not close the entire deficiency in coverage, or would not provide the same level of service as the proposed facility.
With regard to T-Mobile’s assertion that the alternative locations were unavailable as a practical matter, we agree with the district court’s conclusion that T-Mobile inadequately addressed the viability of one particular alternative site in Langley Fork Park (the park). The record before us contains a statement made by a National Park Service representative indicating that the park “would be open to receiving” a proposal for the construction of a pole, similar to others that had been approved at area parks in the past. Even though the park’s policy prohibits the placement of poles in the park until other alternatives are eliminated, the difficulties presented in meeting such restrictions are insufficient to establish that a provider lacks reasonable alternatives for the provision of its services.
We also agree with the district court’s conclusion regarding T-Mobile’s argument that the alternate locations discussed were inconsistent with the County’s comprehensive plan. Under its heavy burden, it is inadequate for T-Mobile to assert simply that the County’s comprehensive plan states a preference for collocating wireless facilities on existing poles, rather than for constructing entirely new facilities. The County’s stated preference for one type of facility is insufficient to show that other types of alternative facilities are not reasonably available in a particular case.
Finally, we observe that T-Mobile has failed to present evidence that future attempts to gain approval for wireless facilities to enhance its coverage would be fruitless. To the contrary, the record demonstrates that the Board has a strong history of approving wireless facilities, including applications for wireless facilities submitted by T-Mobile.
Accordingly, based on the record before us, we conclude that T-Mobile has failed to meet its heavy burden to show that the Board’s denial of the applications for a single wireless facility amounted to a general effective prohibition on wireless service, in violation of subsection (B)(i)(II). Therefore, we hold that the district court did not err in granting summary judgment to the Board on this claim.
B.
We next consider whether the Board unreasonably discriminated against T-Mobile by denying its applications, in violation of subsection (B)(i)(I). T-Mobile bases its contention of unreasonable discrimination on the fact that the Board previously permitted both Verizon and AT *270 & T, two companies offering the same or similar services as T-Mobile, to construct expanded facilities on the pole. Before addressing the merits of this argument, we review the standard applicable to our consideration of a claim alleging a violation of subsection (B)(i)(I).
T-Mobile contends that the district court, in determining that the record failed to show that the Board unreasonably discriminated against T-Mobile, incorrectly interpreted our decision in Virginia Beach, the only case in which we have addressed subsection (B)(i)(I). According to T-Mobile, we failed to adopt a standard in Virginia Beach for considering claims raised under subsection (B)(i)(I). T-Mobile urges us to employ a test used in other circuits, namely, whether the petitioning provider and other providers are “functionally equivalent,” and whether the petitioning provider’s proposed facility and the other facilities are “similarly situated.” See Ogden Fire Co. No. 1 v. Upper Chichester Twp., 504 F.3d 370, 392 (3d Cir. 2007); MetroPCS, 400 F.3d at 728. We decline T-Mobile’s invitation and disagree with its characterization of our precedent.
We begin by reviewing our discussion in Virginia Beach addressing subsection (B)(i)(I). As stated above, in that case, the local governing body had denied an application submitted jointly by four telecommunication companies to construct two towers in a residential area. Id., 155 F.3d at 424. Although the district court concluded that the local governing body unreasonably discriminated against the applicants, we reversed the district court’s decision. Id.
In their appeal to this Court, the parties in Virginia Beach presented opposing views regarding the proper interpretation of subsection (B)(i)(I). Id. at 426-27. After considering the parties’ arguments, we declined to adopt a fixed test for determining unreasonable discrimination under subsection (B)(i)(I), and instead focused our review on the facts and circumstances surrounding the local governing body’s decision. Id. at 427.
We explained that because the application at issue was submitted by four different telecommunication providers, each of which offered varying types of services, the local governing body plainly had not discriminated against any particular provider or type of service. Id. We emphasized that only unreasonable discrimination was prohibited under the statute, and stated that even if the local governing body had discriminated against the applicants, such discrimination was not unreasonable. Id.
We based our conclusion on the fact that the local governing body’s decision rested on traditional zoning principles, including the preservation of neighborhood character and the avoidance of aesthetic blight, and on the absence of evidence that the local governing body intended to favor one company or form of service over another. Id. We explained that if this action by the local governing body were held unreasonable, then almost every denial of an application necessarily would violate subsection (B)(i)(I). Id.
In support of this conclusion, we cited a House of Representatives Conference Report, in which the conferees expressed their intent that subsection (B)(i)(I) provide “localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services.” Virginia Beach, 155 F.3d at 427 n. 3 (quoting H.R.Rep. No. 104-458, at 208 (1996), 1996 U.S.C.C.A.N. 10, 222 (Conf. Rep.)). We also described the evidence in the record supporting the local governing *271 body’s decision, noting both the significant opposition voiced by community members based on aesthetic concerns, and the lack of evidence suggesting “ill -will” toward the applicants or their services. Id. at 427-28.
While T-Mobile is correct that our decision in Virginia Beach did not adopt a specific test for the review of unreasonable discrimination claims, we nevertheless established a framework for analyzing such claims. Under this framework, we carefully considered the language of subsection (B)(i)(I) and the evidence supporting the local governing body’s decision. We concluded that the local governing body had not unreasonably discriminated against the applicants for several reasons, including that the local governing body’s decision was based on legitimate concerns involving traditional zoning principles.
In the present case, the district court properly applied the same type of fact-based analysis that we employed in Virginia Beach. We likewise employ this type of analysis here, and decline T-Mobile’s request that we use a different methodology for the review of unreasonable discrimination claims. We therefore turn to consider whether the present record supports T-Mobile’s argument that the district court erred in determining that the Board’s decision did not violate subsection (B)(i)(I).
The record contains extensive evidence that the residents’ opposition to T-Mobile’s proposal was based on the traditional zoning principle of aesthetic impact. The record shows that the 10-foot extension of the pole would materially alter the visual impact of the pole for nearby residents. The results of a “visibility test” conducted by the Planning Commission staff demonstrated that T-Mobile’s proposed facility in this residential area would be taller than any other transmission pole in the vicinity. Additionally, the visual impact of the extended pole would be greater than simply its increased height, because the antennas to be affixed to the top of the extended pole would add a component cylindrical in shape that also could be seen by the nearby residents.
Contrary to T-Mobile’s contention, the record does not show that T-Mobile’s proposed facility is essentially the same as, or less invasive than, previously-approved facilities erected by AT & T and Verizon. As noted by the district court, AT & T’s facility did not increase the height of the pole and was not opposed by members of the surrounding community. And, while Verizon earlier had obtained an extension of the pole from 90 feet to the pole’s current height of 100 feet, this fact did not render the Board’s denial of T-Mobile’s proposed additional ten-foot extension unreasonably discriminatory per se.
As recognized in the Conference Report cited in our decision in Virginia Beach, subsection (B)(i)(I) provides a local governing body with the flexibility to treat a proposed facility differently than another facility when there is a difference in the visual impact or aesthetic character of the individual facilities. See Virginia Beach, 155 F.3d at 427 n. 3 (citing H.R.Rep. No. 104-458, at 208 (1996) (Conf.Rep.)). Here, as we have noted, there was evidence of a difference in the visual impact of T-Mobile’s proposed facility, because the aesthetic impact of the pole’s increased height was compounded by the cylindrical configuration to be placed near the top of the pole extension.
Additionally, as the district court observed, T-Mobile was required to obtain a special exception from the Board at the time T-Mobile filed its application, while the earlier applications filed by Verizon and AT & T were not subject to this more rigorous and attenuated procedure. To obtain a special exception, T-Mobile was *272 required to demonstrate to the Board that its proposed facility would be “harmonious with and [would] not adversely affect the use ... of neighboring properties.” Zoning Ordinance § 9-006(3). Thus, this heightened standard to which T-Mobile was held further distinguishes T-Mobile’s applications from those of Verizon and AT & T, and demonstrates that the Board did not unreasonably discriminate against T-Mobile.
T-Mobile argues, nevertheless, that the Board’s implementation of this special exception requirement shows that the Board unreasonably discriminated against T-Mobile. However, because T-Mobile did not raise this argument before the district court, we decline to consider the argument here in reviewing the district court’s decision under subsection (B)(i)(I). See Skipper v. French, 130 F.3d 603, 610 (4th Cir. 1997).
The record thus shows that the Board’s denial of T-Mobile’s applications was based on legitimate, traditional zoning principles, and that the facilities earlier approved for Verizon and AT & T can be distinguished on several grounds. Accordingly, we affirm the district court’s determination that the Board did not unreasonably discriminate against T-Mobile, and was entitled to summary judgment on that claim.
IV.
For the reasons stated, we hold that the district court did not err in concluding that T-Mobile failed to establish that the Board effectively prohibited personal wireless services, as proscribed by subsection (B)(i)(II), or unreasonably discriminated against T-Mobile, as proscribed by subsection (B)(i)(I). Therefore, we affirm the district court’s holding granting summary judgment in favor of the Board.

AFFIRMED

. T-Mobile also named Fairfax County as a defendant, but the district court granted the County’s motion to dismiss. T-Mobile does not challenge that ruling on appeal.

. The provision authorizing T-Mobile’s suit, 47 U.S.C. § 332(c)(7)(B)(v), provides that any person adversely affected by a final action by a local governing body that is inconsistent with 47 U.S.C. § 332(c)(7)(B) may, within 30 days, commence an action in any court of competent jurisdiction.

. Another statutory limitation on a local governing body’s authority was raised in T-Mobile’s complaint filed in the district court. T-Mobile asserted that the Board's decision denying T-Mobile’s applications was not supported by substantial evidence, in violation of 47 U.S.C. § 332(c)(7)(B)(iii). The district court granted summary judgment in favor of the Board on this claim, and T-Mobile does not challenge that ruling on appeal.

. T-Mobile also asserts that the proposed facility was the “least intrusive” alternative to *268 providing adequate coverage. However, as explained above in section 111(A)(1), this Court has rejected the “least intrusive means” analysis. See Albemarle County, 211 F.3d at 87. Therefore, we do not consider T-Mobile’s argument on this issue.