PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NEW CINGULAR WIRELESS PCS,
LLC, d/b/a AT&T Mobility,

*Plaintiff-Appellant,*

v.

No. 10-2381

THE FAIRFAX COUNTY BOARD OF
SUPERVISORS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(1:10-cv-00283-LMB-TRJ)

Argued: January 26, 2012

Decided: March 19, 2012

Before AGEE, DAVIS, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opin-
ion, in which Judge Davis and Judge Floyd joined. Judge
Davis wrote a separate concurring opinion.

**COUNSEL**

**ARGUED:** Hans J. Germann, MAYER BROWN, LLP, Chicago, Illinois, for Appellant. Laura Schempf Gori, COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for Appellee. **ON BRIEF:** David H. Cox, James N. Markels, JACKSON & CAMPBELL, PC, Washington, D.C.; John E. Muench, Nissa J. Imbrock, MAYER BROWN, LLP, Chicago, Illinois, for Appellant. David P. Bobzien, County Attorney, Elizabeth Doyle Teare, Senior Assistant County Attorney, COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for Appellee.

---

**OPINION**

AGEE, Circuit Judge:

The Telecommunications Act of 1996 ("the Act") requires that a local government's denial of a request to place "personal wireless service facilities" be supported by substantial evidence, and not "have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. §§ 332(c)(7)(B)(i)(II) & 332(c)(7)(B)(iii). In this case, the Board of Supervisors of Fairfax County, Virginia ("the Board") rejected the application of New Cingular Wireless ("AT&T") to build an 88-foot telecommunications tower in a residential neighborhood, a decision which AT&T later challenged in the United States District Court for the Eastern District of Virginia. The district court determined that substantial evidence undergirded the Board's decision, and that the Board's ruling did not effectively prohibit wireless services under the Act. For the reasons discussed below, we affirm the judgment of the district court.

I.

Under the applicable Fairfax County, Virginia ("the

County") zoning ordinance, telecommunications facilities may be located in residential zoning districts only by special exception. *See* Zoning Ordinance §§ 3-304(1), 9-001;[1] Va. Code § 15.2-2286(A)(3). Where, as here, a party seeks to build a telecommunications facility in a residential neighborhood,[2] it must submit a special exception application to the Board. It is the Board's denial of such an application that is at issue here.[3]

In addition to a special exception application, a party seeking to build a telecommunications tower that is not shown on the County's Comprehensive Plan must submit a zoning application to the County Planning Commission. *See* Va. Code § 15.2-2232. After determining whether the application substantially conforms to the County's Comprehensive Plan, the Planning Commission makes a recommendation to the Board, which can overrule the Planning Commission's decision. *Id.* While the Planning Commission made a recommendation that the Board approve AT&T's zoning application in this case, the Board did not rule on that matter, and it is not at issue here. To provide a complete picture of the facts underlying this dispute, however, we note below the findings of both the Planning Commission and the Board.

AT&T, contending that it could only provide limited in-building and in-vehicle wireless services in the County's Fort Hunt area, submitted a special exception application to the

---

[1]Citations to the "Zoning Ordinance" refer to the Fairfax County, Virginia Zoning Ordinance.

[2]The relevant County zoning designation for the neighborhood in which AT&T's proposed telecommunications facility was to be located, R-3, is a residential neighborhood "established to provide for single family detached dwellings . . . ; to provide for affordable dwelling unit developments; to allow other selected uses which are compatible with the low density residential character of the district; and otherwise to implement the stated purpose and intent of this Ordinance." Zoning Ordinance § 3-301.

[3]*See* J.A. 509-14 (Board voting to deny Special Exception Application 2008-MV-031).

Board and a zoning application to the Planning Commission to determine whether its proposal substantially conformed to the County's Comprehensive Plan. The proposed facility, consisting of a 15-foot tall storage shed and an 88-foot tower disguised as a tree ("the tree monopole"), was to be erected behind a Masonic lodge in an otherwise residential neighborhood, approximately one hundred feet from nearby residences.

At a hearing on the matter, "[s]everal individuals who live near the proposed site testified . . . in opposition to the construction of the wireless tower." *New Cingular Wireless PCS, LLC d/b/a AT&T Mobility v. Fairfax Cnty. Bd. of Sup'rs*, No. 10-cv-283, 2010 WL 4702370, at *1, (E.D. Va. November 10, 2010) ("*New Cingular*"). Despite these objections, the Planning Commission found that the proposed facility substantially conformed to the Comprehensive Plan, and made a recommendation to the Board for approval of AT&T's application.

Pursuant to Zoning Ordinance 9-006(3), the Board may approve a special exception application only when the proposed facility is "harmonious with" and would not "adversely affect the use . . . of neighboring properties . . . ." Furthermore, the County's Policy Plan, which comprises a portion of the Comprehensive Plan, states that new telecommunications facilities should be located "on properties that provide the greatest opportunity to conceal the telecommunications facilities," and designed to "provide[ ] the least visual impact on residential areas. . . ." Pol. Plan Obj. 42(b) & (i), set forth in Br. of Appellant at A10-A11.

The Board held a public hearing, and, based on its consideration of community opposition and the aforementioned zoning regulations, among other things, denied AT&T's special exception application. In its eleven-page ruling,[4] the Board

---

[4]The Board issued a written opinion outlining its findings after AT&T filed its complaint in this action. The issue whether the Board complied with the Act's requirement that a decision be in writing is not at issue in this appeal.

described the facts upon which it based its determinations that AT&T's proposal did not conform to the County's Comprehensive Plan or the standards for approval of a special use exception under the zoning ordinance:

> The Proposed Facility is proposed to be located . . . at a distance of only approximately 100 feet from two of the neighboring residences. . . . [E]xisting vegetation on the Proposed Site is minimal. . . . On the northern and western sides of the building, there are concrete pads. On the eastern end of the Proposed Site there are a few trees and a small, grassy area with dense brush. Otherwise, the remainder of the Proposed Site is paved with asphalt. . . . The Proposed Facility would . . . extend 38 feet above the closest tree. There are some existing trees located on adjacent property . . . but those trees average only approximately 40 feet in height. . . . The tree monopole clearly towers above the neighboring trees. . . . Further, the proposed supplemental vegetation would not reach a sufficient height to minimize the visual impact of the Proposed Facility. . . . Forty-seven members of the community signed a Petition opposing the Proposed Site and approximately twenty-one community members attended a meeting to discuss their opposition to the Proposed Site. Based on the addresses provided on the Petition and meeting sign-in sheet, these community members live within approximately a one-mile radius of the Proposed Site. . . . The Board took this community opposition into consideration as one of the many factors it considered . . . .

JA 160-66 (citations omitted).

Following the Board's denial of the special exception application, AT&T filed a complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v), alleging that the Board's decision violated

the Act's substantial evidence requirement, § 332(c)(7)(B)(iii), and that the decision amounted to an effective prohibition of wireless services in violation of § 332(c)(7)(B)(i)(II). Ruling on the parties' cross-motions for summary judgment, the district court held first that:

> the Fairfax Board reached a reasonable decision [under subsection (B)(iii)] to deny [AT&T's] application on the basis of a determination that the proposed telecommunications facility was not in harmony with the local Zoning Ordinance and the County's Comprehensive Plan, that community residents were understandably opposed to the construction of a telecommunications tower in the middle of a residential area, and that the proposed . . . treepole facility would be highly visible at the proposed site and would depress local property values.

*New Cingular*, 2010 WL 4702370, at *3. Secondly, the district court determined that, "particularly in light of evidence of the Board's previous approval of numerous zoning applications for telecommunications facilities, including at least three of [AT&T's] own telecommunications facilities in the vicinity of the proposed site[,]" there was no violation of subsection (B)(i)(II). *Id.*

AT&T filed a timely notice of appeal and we have jurisdiction under 28 U.S.C. § 1291.

## II.

The Court reviews de novo an award of summary judgment, *S.C. Green Party v. S.C. State Election Comm'n*, 612 F.3d 752, 755 (4th Cir. 2010), which is appropriately granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

Subsection (B)(iii) of the Act, commonly termed the "substantial evidence requirement," mandates that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be . . . supported by substantial evidence. . . ." 47 U.S.C. § 332(c)(7)(B)(iii). We first consider AT&T's contention that the Board's decision failed to comply with the substantial evidence requirement.

In reviewing a decision of a zoning board, we are "not free to substitute [our] judgment" for that of the board. *AT & T Wireless PCS, Inc. v. Winston-Salem Zoning Bd. of Adjustment*, 172 F.3d 307, 314 (4th Cir. 1999)("*Winston-Salem*"). To the contrary, we "must uphold a decision that has 'substantial support in the record as a whole' even if [we] might have decided differently as an original matter." *AT & T Wireless PCS, Inc. v. City Council of Va. Beach*, 155 F.3d 423, 430 (4th Cir. 1998)("*Virginia Beach*")(citation omitted). The task before us, then, is to determine whether the record "contains such relevant evidence that a reasonable mind might accept as adequate to support the Zoning Board's conclusion." *Winston-Salem*, 172 F.3d at 315 (internal quotation marks omitted). Such evidence must be "more than a mere scintilla," but can be "less than a preponderance." *Petersburg Cellular P'ship v. Bd. of Sup'rs of Nottoway Cnty.*, 205 F.3d 688, 694 (4th Cir. 2000)("*Nottoway County*").

In determining that the Board's decision satisfied subsection (B)(iii), the district court correctly noted that "a proposed telecommunications facility's inconsistency with local zoning requirements can be sufficient to establish substantial evidence supporting the denial of a zoning application." *New Cingular*, 2010 WL 4702370, at *4. Not only have we observed that "evidence regarding" a proposed telecommunication facility's negative "impact on the neighborhood" may support a finding of substantial evidence, *Winston-Salem*, 172

F.3d at 317, but we have recognized that, even in the face of conflicting evidence presented by the wireless provider, sufficient evidence may support a board's decision where there is evidence that the proposed facility "would be inconsistent with" a county's "Comprehensive Plan" or "Zoning Ordinance." *360° Commc'ns Co. of Charlottesville v. Bd. of Sup'rs of Albemarle Cnty.*, 211 F.3d 79, 84-85 (4th Cir. 2000). *See also USCOC of Va. RSA #3 v. Montgomery Cnty. Bd. of Sup'rs*, 343 F.3d 262, 272 (4th Cir. 2003)("*Montgomery County*")(finding that the denial of an application to build a telecommunications tower found "ample support" in the form of "evidence regarding the proposed tower's inconsistencies" with "zoning ordinances and guidelines").

Here, as the district court recognized, "the Board identified a number of ways in which [AT&T's] proposed wireless facility would not be in harmony with the zoning objectives and the Comprehensive Plan for that geographical area." *New Cingular*, 2010 WL 4702370, at *5. Indeed, far from "provid[ing] the least visual impact on residential areas," as required by the County's Policy Plan Objective 42(i), the Board noted that the proposed facility: (1) was to be located 100 feet from two of the neighboring residences; (2) would extend thirty-eight feet above the closest tree; (3) would rise approximately forty-eight feet above the average height of the existing trees on the adjacent property; (4) was to be located on a site containing concrete pads, with only a few trees and a small, grassy area with dense brush; and (5) called for supplemental vegetation that, when full grown, would not reach a sufficient height to minimize the tree monopole's visual impact. Like the district court, we find that these discrete characteristics of the proposal, when considered together, are adequate to support the Board's conclusions that the proposed facility does not satisfy the County's Policy Plan or the standards for approval under the zoning ordinance.

Moreover, even if it were assumed the above evidence were insufficient by itself to satisfy subsection (B)(iii), there is an additional basis on which we may conclude that the Board's decision was supported by substantial evidence in the record. As our precedent reflects, when considering whether the record "contains such relevant evidence that a reasonable mind might accept as adequate to support the Zoning Board's conclusion," *Winston-Salem*, 172 F.3d at 315 (internal quotation marks omitted), we have explained that "a reasonable mind" should be understood as "the mind of a reasonable legislator." *Nottoway County*, 205 F.3d at 694. Under this reasonable-legislator standard, "[i]t is not only proper but even expected that a legislature and its members will consider the views of their constituents to be particularly compelling forms of evidence." *Virginia Beach*, 155 F.3d at 430. Hence, "[i]f a legislative body denies a permit based on the reasonably-founded concerns of the community, then undoubtedly there is substantial evidence to support the body's decision."[5] *Nottoway County*, 205 F.3d at 695 (internal quotation marks and emphasis omitted).

The record indicates that the Board considered community opposition that "[f]acilities of this type do not belong in a residential community such as ours," JA 528, and would "disrupt the neighborhood and the country-like setting." JA 788 (internal quotation marks and alterations omitted). Given the design of the proposed facility and its placement in the midst of a residential neighborhood, we agree with the district court that those community concerns were not irrational. Additionally, board members observed at the hearing that "there [are] a lot of houses in close proximity" to the proposed site, and that the site "is in the middle of a residential neighborhood with very close neighbors . . . that would see [the monopole] all the

---

[5]Of course, while "reasonably-founded concerns of the community" would constitute substantial evidence, the "objectively unreasonable" opposition of an "irrational" few cannot. *Nottoway County*, 205 F.3d at 695.

time." JA 511-12. On the basis of these reasonably founded community concerns, we have little difficulty concluding that the Board's decision was supported by substantial evidence.

For these reasons, we find the Board's denial of AT&T's application had substantial support in the record as a whole and complied with the substantial evidence requirement of subsection (B)(iii) of the Act.

## B.

We next consider whether the Board's decision complied with subsection (B)(i)(II) of the Act, which forbids decisions on tower placement that have the effect of prohibiting a carrier from providing personal wireless services to the area. We recently decided a similar question in *T-Mobile Northeast, LLC v. Fairfax County Board of Supervisors*, No. 11-1060 (4th Cir. Mar. 1, 2012), in which we recognized that

> the language of this subsection does not encompass the ordinary situation in which a local governing body's decision merely limits the level of wireless services available because, as we have explained, the Act cannot guarantee 100 percent coverage.

Slip op. at 13. Moreover, we stated that

> we emphasize that a plaintiff's burden to prove a violation of subsection (B)(i)(II) is substantial and is particularly heavy when, as in this case, the plaintiff already provides some level of wireless service to the area.

*Id.* Lastly, we made clear in *T-Mobile* that

> a plaintiff must meet one of two standards to prevail under subsection (B)(i)(II). The plaintiff must establish: 1) that a local governing body has a general pol-

icy that effectively guarantees the rejection of all wireless facility applications, *Albemarle County*, 211 F.3d at 87; *Virginia Beach*, 155 F.3d at 429; or 2) that the denial of an application for one particular site is "tantamount" to a general prohibition of service, *Albemarle County*, 211 F.3d at 87-88.

In asserting a claim under this second theory, as T-Mobile does here, a plaintiff must show a legally cognizable deficit in coverage amounting to an effective absence of coverage, and that it lacks reasonable alternative sites to provide coverage. *See id.* at 87-88. We also have stated that the plaintiff should be able to demonstrate that further reasonable efforts to gain approval for alternative facilities would be "fruitless." *See* [*Montgomery County*], 343 F.3d [at] 269; *Albemarle County*, 211 F.3d at 88.

*Id.* at 13-14. As explained presently, even if we were to assume under *T-Mobile*'s "second theory" that AT&T provided evidence establishing a prima facie case of an effective absence of coverage, it simply failed to provide evidence to establish "a lack of reasonable alternative sites."

In seeking to present evidence of a lack of reasonable alternatives, AT&T contends that it "presented evidence that it had examined numerous other locations, but they were unusable or unavailable."[6] Br. for Appellant at 45. One of these locations, Fort Hunt National Park, was in AT&T's view "unavailable" because previous attempts by Verizon, a competing carrier, to locate two wireless facilities in nearby national parks indicated that park officials "were 'loathe' [sic] to

---

[6]AT&T also argues that our analysis should be guided by the FCC's most recent order, *In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B)*, 24 FCC Rcd. 13994 (F.C.C. 2009). Br. for Appellant at 40-42. We considered and rejected that argument in *T-Mobile*. Slip op. at 9-12.

locate wireless facilities on park property, and applications can take years to process with no certainty of outcome." *Id.; see also* Reply Br. for Appellant at 26 ("[P]ark officials are loathe [sic] to allow such facilities and applications can take years to process with no certainty of outcome.").

The plaintiff in *T-Mobile* advanced a very similar argument, contending that alternative sites were unavailable as a practical matter because a national "park's policy prohibit[ed] the placement of poles in the park until other alternatives are eliminated." Slip op. at 15. The Court swiftly discarded this assertion, finding "the difficulties presented in meeting such restrictions are insufficient to establish that a provider lacks reasonable alternatives for the provision of its services." *Id.* at 15.

Here, AT&T provides even less evidence than did T-Mobile. As discussed above, the entirety of AT&T's argument on this point is its bare assertion, based on nothing but the speculation of a consultant, that Fort Hunt National Park "was not a feasible option because park officials were 'loathe' [sic] to locate wireless facilities on park property, and applications can take years to process with no certainty of outcome." Br. for Appellant at 45; Reply Br. for Appellant at 26. As we concluded in *T-Mobile*, since a national park's general policy of denying applications because other sites have not been eliminated as possibilities constitutes insufficient evidence to prove a § 332(c)(7)(B)(i)(II) claim, all the more so are the wholly speculative assertions provided here. For even if park officials might have been "loath" to approve a proposal, a plaintiff's mere reference to a competitor's prior experience seeking to locate undescribed and unknown facilities in different parks, without more, is insufficient evidence on which to establish a lack of reasonable alternative sites.

We thus agree with the district court's conclusion that because AT&T "has yet to even submit . . . an application to Fort Hunt National Park authorities," AT&T's argument "that

there are 'no other feasible alternatives' to the Masonic Lodge site is unpersuasive." *New Cingular*, 2010 WL 4702370, at *9.

Moreover, where a plaintiff asserts a claim that a denial of an application is tantamount to a general prohibition of service, we have also required that plaintiff "to demonstrate that further reasonable efforts to gain approval for alternative facilities would be fruitless." *T-Mobile*, slip op. at 14 (internal quotation and citation omitted). A plaintiff can satisfy this burden only where further efforts would be "so likely to be fruitless that it is a waste of time to try." *Montgomery County*, 343 F.3d at 268; *Albemarle County*, 211 F.3d at 88 (quoting *Town of Amherst, N.H. v. Omnipoint Commc'ns Enters., Inc.*, 173 F.3d 9, 14 (1st Cir. 1999)). Although AT&T argues that applications to place a telecommunications facility on a national park "*can take* years to process with no certainty of outcome," such an allegation is purely speculative and without any factual basis in the record. Thus, AT&T has not established that it would be "*likely*" that an application would fail.

Based on the failure of proof by AT&T, the district court correctly granted summary judgment to the Board on AT&T's claim that the Board's denial of its application violated subsection B(i)(II) of the Act.

III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

DAVIS, Circuit Judge, concurring:

I concur fully in Judge Agee's fine opinion for the panel. As Judge Agee ably explains, substantial evidence supports the Board's decision, and AT&T has failed to provide more

than a scintilla of evidence from which a reasonable fact-finder could conclude that further efforts to secure approval for a wireless facility in Fort Hunt National Park are "so likely to be fruitless that it is a waste of time to try." Maj. Op. at 13 (quoting *USCOC of Virginia RSA#3, Inc. v. Montgomery County Board of Supervisors*, 343 F.3d 262, 268 (4th Cir. 2003)). That is, I agree that AT&T's evidence on the "lack of reasonable alternative sites" is significantly weaker than was T-Mobile's evidence on alternative sites in *T-Mobile Northeast, LLC v. Fairfax County Board of Supervisors*, No. 11-1060, slip op. at 10, (4th Cir. Mar. 1, 2012), which the majority in that case held (over my dissent) to be insufficient to require a trial on the issue. *Id.* at 16. I write separately simply to note that neither in this case nor in *T-Mobile* has this circuit yet determined "whether a particular level of coverage in a particular geographic area constitutes an 'effective absence of coverage.'" *Id.* at 29 (Davis, J., dissenting). That question remains for resolution in a future case.