**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 12-1682**

───────────────

T-MOBILE NORTHEAST LLC,

        Plaintiff – Appellant,

    v.

HOWARD COUNTY BOARD OF APPEALS,

        Defendant – Appellee.

───────────────

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Richard D. Bennett, District Judge.
(1:11-cv-00729-RDB)

───────────────

Argued:  March 21, 2013          Decided:  May 3, 2013

───────────────

Before WILKINSON, KING, and WYNN, Circuit Judges.

───────────────

Affirmed by unpublished opinion. Judge Wynn wrote the opinion,
in which Judge Wilkinson and Judge King concurred.

───────────────

**ARGUED:** Thomas Scott Thompson, DAVIS WRIGHT TREMAINE, LLP,
Washington, D.C., for Appellant.  Melissa Shane Whipkey, HOWARD
COUNTY OFFICE OF LAW, Ellicott City, Maryland, for Appellee.  **ON
BRIEF:** Margaret Ann Nolan, County Solicitor, HOWARD COUNTY
OFFICE OF LAW, Ellicott City, Maryland, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

T-Mobile Northeast LLC ("T-Mobile") challenges a zoning decision by the Howard County Board of Appeals (the "Board") denying T-Mobile's application for a conditional use permit to construct a communications tower on the property of a church located in the County. T-Mobile argues that the Board violated the Telecommunications Act of 1996 in denying the company's permit application because the decision was not supported by substantial evidence or, in the alternative, because it effectively prohibited the provision of wireless services.

But our review reveals that substantial evidence supports the Board's conclusion that T-Mobile did not diligently seek to site the tower on government property, as required by local zoning regulations. And we cannot conclude that the Board's denial constitutes an effective prohibition of service because T-Mobile did not demonstrate that there are no reasonable alternatives to the church site to remedy its coverage deficiency. Therefore, we affirm.

I.

T-Mobile, a licensed personal wireless services provider, determined that it had a coverage deficiency along a portion of Burntwoods Road in Howard County, Maryland. To remedy the deficiency, T-Mobile sought to construct a new facility, a

2

"stealth" telecommunications monopole, at the rear of Shepherd of the Glen Lutheran Church property in Glenwood, Maryland (the "site"). T-Mobile considered siting the facility at four other locations-Glenelg High School, Walnut Springs Nursery, Gethsemane Baptist Church, and a cluster of amateur "ham" radio towers-but ultimately determined that each of these locations was either not technically feasible or practically unavailable.

The site selected by T-Mobile is zoned as a Rural Residential-Density Exchange Option District. Howard County's zoning regulations require a conditional use permit for the construction of communications towers on Rural Residential-Density Exchange Option District properties. In pertinent part, Howard County's zoning regulations provide:

> The Hearing Authority shall have the power to permit conditional uses, provided the following general standards are met: . . .

> The proposed use at the proposed location will not have adverse effects on vicinal properties above and beyond those ordinarily associated with such uses. In evaluating the plan under this standard, the Hearing Authority shall consider whether: . . .

> The ingress and egress drives will provide safe access with adequate sight distance, based on actual conditions, and with adequate acceleration and deceleration lanes where appropriate. . . .

> An applicant for a new communication tower shall demonstrate that a diligent effort has been made to locate the proposed communication facilities on a government structure or, on an existing structure or within a nonresidential zoning district, and that due to valid considerations, including physical

3

> constraints, and economic or technological feasibility, no appropriate location is available.

Howard County Zoning Regulations §§ 131.B, 131.N.14.b.(1). The regulations also provide that

> The applicant for a conditional use shall have the burden of proof, which shall be by a preponderance of the evidence and which shall include the burden of going forward with the evidence and the burden of persuasion on all questions of fact which are to be determined by the Hearing Authority or are required to meet any provisions of these regulations.

Id. § 131.G.

On November 20, 2009, T-Mobile submitted a "Conditional Use Petition" to the Howard County Hearing Authority requesting to build a wireless facility on the site. On February 18, 2010, the Howard County Department of Planning and Zoning issued a Technical Staff Report finding that T-Mobile had satisfied the criteria for a conditional use permit and recommending that T-Mobile's petition be granted.

After holding a hearing, the Hearing Examiner issued a decision denying T-Mobile's petition on March 15, 2010. In so ruling, the Hearing Examiner found there were no "sight distance" or safe access issues and that T-Mobile had complied with regulations regarding the investigation of alternative sites, but denied the petition due to concerns over the size of T-Mobile's proposed equipment compound.

4

T-Mobile appealed to the Board. The Board held three public hearings concerning T-Mobile's application during which participants questioned T-Mobile's efforts to site the facility at alternative locations. In particular, Board members expressed concern that T-Mobile had not engaged in formal negotiations with Glenelg High School to locate the facility there. The Board denied T-Mobile's petition on February 16, 2011 on grounds that the company had failed to meet its burden to demonstrate that the proposed ingress and egress to the site would "provide safe access with adequate sight distance" and to show that it had made a diligent effort to site the facility on government property. J.A. 135.

T-Mobile brought the present action in federal district court on March 18, 2011, seeking declaratory and injunctive relief from the Board's decision. Specifically, T-Mobile alleged that the Board's denial of the company's permit application violated two provisions of the Telecommunications Act, 47 U.S.C. § 332(c)(7)(B)(i)(II) and (B)(iii), and Maryland law. T-Mobile moved for summary judgment on August 26, 2011, and soon thereafter the Board filed a cross-motion for summary judgment. On March 30, 2012, the district court denied T-Mobile's motion and entered summary judgment in favor of the Board. T-Mobile Ne. LLC v. Howard Cnty. Bd. of Appeals, 2012 WL 1123043, at *10 (D. Md. March 30, 2012) ("Howard County").

5

Following the district court's denial of T-Mobile's Motion to Reconsider, T-Mobile timely appealed to this Court.

## II.

We review a district court's decision on summary judgment de novo, "applying the same legal standards as the district court."  T-Mobile Ne. LLC v. City of Newport News, Va., 674 F.3d 380, 384-85 (4th Cir. 2012) ("Newport News") (quotation omitted).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a party is entitled to summary judgment, we consider "all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party."  Newport News, 674 F.3d at 385 (quotation marks omitted).

On appeal, T-Mobile contends that the district court's decision was contrary to the Telecommunications Act, which Congress enacted to facilitate the development and proliferation of new telecommunications technology and infrastructure.  See Pub. L. No. 104-104, 110 Stat. 56 (1996).  In drafting the statute, Congress sought to preserve local and state governments' traditional control over land use and zoning decisions, while also ensuring their decisions did not

6

constitute an undue impediment to the rapid deployment of wireless communications technology. 360˚ Commc'ns Co. of Charlottesville v. Bd. of Supervisors of Albemarle Cnty., 211 F.3d 79, 86 (4th Cir. 2011) ("Albemarle County").

T-Mobile argues that the Board's decision ran afoul of two provisions of the Telecommunications Act: (1) Section 332(c)(7)(B)(iii), which requires that state or municipal decisions denying an application to construct a wireless service facility be "supported by substantial evidence," and (2) Section 332(c)(7)(B)(i)(II), which provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services."[1] We disagree.

---

[1] T-Mobile also contends that the Board's decision violated Maryland Law, which requires that a Board's decision be in accordance with local zoning regulations and supported by facts in the record. Md. Code. Ann. art 25A, § 5; J.A. 23-24. To satisfy Section 332(c)(7)(B)(iii)'s substantial evidence requirement, a zoning decision must comply with state and municipal zoning law. Mobile Cent., LLC v. Wyandotte Cnty., 546 F.3d 1299, 1307 (10th Cir. 2008); MetroPCS, Inc. v. City & Cnty. of San Francisco, 400 F.3d 715, 723-24 (9th Cir. 2005); Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 495 (2d Cir. 1999). Thus, as the district court correctly concluded, T-Mobile's contention that the decision was not in accord with Maryland law merges with its substantial evidence claim under the Telecommunications Act. Howard Cnty., 2012 WL 1123043, at *4.

A.

For purposes of actions under Section 332(c)(7)(B)(iii), we have held that " '[s]ubstantial evidence' is more than a mere scintilla, but less than a preponderance," Newport News, 674 F.3d at 385, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," AT&T Wireless PCS, Inc. v. City Council of the City of Virginia Beach, 155 F.3d 423, 430 (4th Cir. 1998) (quoting Universal Camera v. NLRB, 340 U.S. 474, 488 (1951)). Under this standard, we must affirm if the Board's decision was reasonable, even if we would have reached a different conclusion independently. Newport News, 674 F.3d at 386.

 T-Mobile contends that substantial evidence did not support the Board's conclusion that T-Mobile failed to make a diligent effort to site the facility on government property, as required by local regulations. Howard County Zoning Regulations § 131.N.14.b.(1). In particular, the Board found that T-Mobile failed to make adequate efforts to site the facility at Glenelg High School because the company

> made only telephone calls to the Howard County School Facilities Office about building a telecommunications light pole at the Glenelg High School [and] had not identified anyone [it] had talked to as having authority to decide on acceptance of the monopole installation on the particular property. More importantly, [T-Mobile] had not demonstrated to the Board that it had submitted written proposals with specifications to any person of authority to obtain

8

> acceptance of installation of the monopole on a particular property. A telephone call to an entity without more regarding locating a cell tower on a particular property is hardly sufficient to comport with the requirement of "diligent effort."

J.A. 136.

On appeal, T-Mobile argues that it diligently sought to site the tower at Glenelg High School as evidenced by the fact that it received (1) a verbal rejection from an unidentified employee with the Howard County Public School System (the "School System") facilities office and, subsequently, (2) a written rejection from School System Chief Operating Officer Teresa Alban.

Regarding the verbal rejection, Mearl Kemberling, a site acquisition specialist for T-Mobile, made a phone call to the School System facilities office to gauge its interest in placing the facility on Glenelg High School grounds. Kemberling attested that the person he spoke with said the facilities office recently had rejected a proposal from AT&T Wireless to build a telecommunications facility at the high school and was not interested in T-Mobile's offer either.

But Kemberling was unable to identify the person with whom he spoke and did not know if that person had authority to make a decision regarding whether to install a wireless facility on school property. Nor could Kemberling provide any written record of the phone call, contending it had been destroyed in a

9

flood.  Indeed, during oral argument on the summary judgment motions, T-Mobile's counsel acknowledged that Kemberling "was a little bit sloppy" and "should have at least kept track of who he was talking to and what their position was."  J.A. 596–97.  In such circumstances, we cannot say that the Board unreasonably concluded that Kemberling's single phone call did not constitute a diligent effort to site the facility at Glenelg High School.

Additionally, School System Chief Operating Officer Alban's letter to T-Mobile, dated October 11, 2010, stated simply: "Per your request to provide a written statement, our response is that we have denied the request to put a cell phone tower on school system property."  J.A. 123.  T-Mobile contends that this letter was an "unequivocal[]" denial of its request to install a wireless facility at Glenelg High School.  Appellant's Br. at 36.

But, as the district court correctly noted, the letter was issued the day before the Board's last hearing on T-Mobile's application and "did not contain any specifics as to the request."  Howard Cnty., 2012 WL 1123043, at *6.  T-Mobile also failed to produce any independent documentation regarding the specifics of its "request."  Moreover, given the letter's brevity, we cannot determine whether the letter rejected a particular proposal from T-Mobile or generally denied all requests to install wireless facilities at the school.  Thus,

10

the Board reasonably concluded that the letter did not satisfy T-Mobile's burden to show that it had made a diligent effort to locate the tower at Glenelg High School, and therefore the Board did not commit reversible error in denying T-Mobile's application.[2]

## B.

Having determined that substantial evidence supports the Board's decision, we next must decide whether the denial of T-Mobile's permit application is "tantamount" to a general prohibition of service, in violation of Section 332(c)(7)(B)(i)(II). T-Mobile Ne. LLC v. Fairfax Cnty. Bd. of Supervisors, 672 F.3d 259, 266 (4th Cir. 2012) ("Fairfax County").

To prevail on a theory that the denial of a petition for a particular site effectively prohibits service, a plaintiff must show (1) that there is "a legally cognizable deficit in coverage amounting to an effective absence of coverage, and (2) that it lacks reasonable alternative sites to provide coverage." Id. at 268. "[A] plaintiff's burden to prove a violation of [Section

---

[2] Because substantial evidence supports the Board's conclusion that T-Mobile failed to make diligent efforts to site the facility on government property, we need not address the Board's alternative basis for denying T-Mobile's petition-that T-Mobile failed to provide adequate evidence of safe access to the site.

332(c)(7)(B)(i)(II)] is substantial and is particularly heavy when . . . the plaintiff already provides some level of wireless service to the area." Id. If a plaintiff fails to meet its burden on either of the two prongs, it is not entitled to relief. Id. at 266, 268.

To show a lack of reasonable alternative sites, a plaintiff must "demonstrate that further reasonable efforts to gain approval for alternative facilities would be fruitless." New Cingular Wireless PCS, LLC v. Fairfax Cnty. Bd. of Sup'rs ("New Cingular II"), 674 F.3d 270, 277 (4th Cir. 2012) (quoting Fairfax Cnty., 872 F.3d at 268). This burden is satisfied if the plaintiff shows that reasonable efforts to obtain approval for alternative sites are "so likely to be fruitless that it is a waste of time to try." Id. at 277 (quotations omitted). In assessing whether further efforts to gain approval of alternative facilities would be "fruitless," we also consider a zoning board's past decisions on applications for wireless facilities. Fairfax Cnty., 672 F.3d at 269.

Here, T-Mobile does not dispute that there is some level of wireless coverage in the area. J.A. 450-56 (noting, in an expert report prepared for and relied upon by T-Mobile, that there is not "reliable" in-building and in-vehicle wireless coverage in the area served by the proposed site). Thus, T-

12

Mobile's burden to show a lack of reasonable alternatives is "particularly heavy." Fairfax Cnty., 672 F.3d at 268.

As we explained previously, the Board reasonably determined that T-Mobile failed to produce sufficient evidence that it diligently pursued siting the facility at Glenelg High School. See supra Part II.A. In such circumstances, we cannot presently conclude that T-Mobile has met its "particularly heavy" burden of showing that further efforts to locate the facility at an alternative site-Glenelg High School, in particular-would be "fruitless." Moreover, it is undisputed that the Board has a strong record of approving conditional use permits: Since October 2008, the Board has approved five of the six conditional use permit applications submitted by T-Mobile. Therefore, because T-Mobile has failed to satisfy its burden of showing a lack of reasonable alternatives to the proposed site, it is not entitled to relief under Section 332(c)(7)(B)(i)(II).[3]

## III.

In sum, substantial evidence supported the Board's decision that T-Mobile failed to make diligent efforts to site the facility at Glenelg High School. And T-Mobile did not satisfy

---

[3] Because we conclude that T-Mobile failed to satisfy its burden on the lack of reasonable alternatives prong, we need not, and thus do not, address the effective absence of coverage prong. Fairfax Cnty., 672 F.3d at 266, 268.

13

its "particularly heavy" burden to show that there were no reasonable alternative sites to provide coverage.  Accordingly, we affirm.

AFFIRMED